**DAVID R. OWENS**—CA State Bar No. 180829
Email:  dowens@owenstarabichi.com
**OWENS TARABICHI LLP**
111 N. Market St., Suite 730
San Jose, California  95113
Telephone:(408) 298-8200
Facsimile: (408) 521-2203

Attorneys for Defendant
Wintrode Enterprises, Inc.
d/b/a Bulldog Cases

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **GUNVAULT, INC.,** | Case No. EDCV 12-01459 JAK (RZ) |
| Plaintiff | **DEFENDANT WINTRODE ENTERPRISES INC.'S EXPARTE MOTION TO EXTEND PAGE LIMITS FOR ITS REPLY TO PLAINTIFF GUNVAULT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| **WINTRODE ENTERPRISES, INC. d/b/a BULLDOG CASES,** | |
| Defendant. | Judge:   Hon. John A. Kronstadt |
| **WINTRODE ENTERPRISES, INC. d/b/a BULLDOG CASES,** | |
| Counter-Claimant | |
| vs. | |
| **GUNVAULT, INC.** | |
| Counter-Defendant. | |

owens tarabichi llp
Counselors At Law

Defendant Wintrode Enterprises submits this exparte motion to request an extension of the page limit for Defendant's reply brief to Plaintiff Gunvault's Opposition to Motion for Summary Judgment.  Under this Court's standing order, reply briefs cannot exceed 10 pages unless the Court grant's an application to exceed this page limit.  Given the numerous arguments Plaintiff raises in its opposition (many of which are not stated in the brief but are "incorporated" by referring to over 12 pages of analysis in a separate declaration, and noting that Plaintiff's brief is over the page limit as well) and Defendant's need to adequately address such arguments, Defendant believes it has good cause for this request.  Notice of this exparte motion was given by phone to George Burns counsel for Plaintiff GunVault on January 6, 2014.  (Owens Decl. in Support of Def.'s Reply to Pl.'s Opp. to Summary Judgment ¶ 3.)

As an initial matter, Defendant served interrogatories on September 16, 2013 requesting Plaintiff to specifically identify where each element of each asserted claim was found in each accused product and in each of Plaintiff's own products.  Now, nearly four months later, Defendant has not received a response to these interrogatories.  In fact, Defendant was forced to pursue a motion to compel which was just recently granted, *see* PACER #82, but Defendant has not yet received any responses.  Accordingly, Defendant is now for the first time being provided with Plaintiff's contentions that Defendant's products infringe based on the doctrine of equivalents, *see* Pl.'s Opp. 17-24, despite not alleging such infringement in its complaint or providing adequate discovery responses.

Plaintiff's Opposition contains little legal or factual analysis.  Rather, Plaintiff uses one paragraph for its doctrine of equivalents argument and points the Court to the declaration of its expert, Scott Meek.[1]  (*Id.* 18 ("For brevity, that

---

[1] In fact, in connection with Plaintiff's literal infringement arguments it also makes conclusory statements and refers to over six pages within the Meek's Declaration for its analysis.  (Pl.'s Opp. 15.)

lengthy analysis is incorporated by reference, and will not be repeated here.")
Thus, Plaintiff has effectively extended its own page limit by referring to other
documents.  As the doctrine of equivalents requires extremely detailed and careful
analysis, a party must address not only the general question of whether "the accused
product . . . contain[s] elements identical or equivalent to each claimed element of
the patented invention," *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520
U.S. 17, 40 (1997), but also whether substantial differences exist between the
accused product and the patented product under the so-called function-way-result
test used by the Federal Circuit.  *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d
1206, 1212 (Fed. Cir. 1998).  Both the Federal Circuit and the Supreme Court have
emphasized that any equivalents analysis must be done on a limitation-by-limitation
basis.  *See Warner-Jenkinson Co.*, 520 U.S. at 40 *and AquaTex Indus. v. Techniche
Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007).  Given the detailed analysis
required by the doctrine of equivalents, Plaintiff's failure to provide Defendant with
adequate discovery responses earlier, and Plaintiff's reference to a separate
document for its analysis of equivalents, Defendant has good cause to request a
page limit extension to adequately address this issue.

Further, Plaintiff now claims that Defendant's products statutorily infringe
the "actuator means" disclosed in the patent, based on 35 U.S.C. § 112, ¶ 6.  (Pl.'s
Opp. 23-24.)  As with its doctrine of equivalents argument, Plaintiff did not raise
this issue in its original complaint or adequately in any discovery responses.  And,
in a similar fashion, Plaintiff again does not provide any substantive analysis in its
opposition but instead refers to over five pages of the Meek Declaration, *id.*, again
considerably lengthening its brief.

In addition, by avoiding the inclusion of any detailed analysis of doctrine of
equivalents in its brief, Plaintiff has effectively given itself additional space in
which to raise other arguments that Defendant must now address.  For example,
Plaintiff argues that Defendant waived its patent invalidity argument because

1   Defendant should have presented that argument at the claim construction hearing.

2   (Pl.'s Opp. 6-8.)  While incorrect, this is nonetheless an argument to which

3   Defendant must respond, given the importance of patent validity in a patent

4   infringement suit.  If the patent at issue is invalid, this Court need not decide

5   whether Defendant's products infringe the patent.  Defendant therefore must

6   respond to assert that it did not waive any sort of invalidity argument and that this

7   Court still has the power to consider Defendant's argument and to invalidate the

8   patent.

9        Accordingly, Defendant requests that its reply brief to Plaintiff Gunvault's

10  Opposition to Motion for Summary Judgment be permitted to exceed the 10 page

11  limit and to include no more than 20 pages.  Defendant's proposed Reply is

12  attached hereto as Exhibit A.  In the event that the Court denies this Exparte

13  Motion, Defendant notes that it has concurrently filed a reply brief meeting the 10-

14  page limit, albeit without fully addressing the points raised in Plaintiff's opposition

15  brief.

16  Date:  ___January 6, 2014___   Respectfully Submitted,

17                           /s/ David R. Owens

18                           David R. Owens
                         OWENS TARABICHI LLP

19                           Attorneys for Defendant

20                           Wintrode Enterprises, Inc.
                         d/b/a Bulldog Cases

21

22

23

24

25

26

27

28

# EXHIBIT A

1

**DAVID R. OWENS**—CA State Bar No. 180829
Email: dowens@owenstarabichi.com
**OWENS TARABICHI LLP**
111 N. Market St., Suite 730
San Jose, California  95113
Telephone:(408) 298-8200
Facsimile: (408) 521-2203
f
Attorneys for Defendant
Wintrode Enterprises, Inc.
d/b/a Bulldog Cases

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        WESTERN DIVISION

11

| | |
|---|---|
| **GUNVAULT, INC.,** | Case No. EDCV 12-01459 JAK (RZ) |
| Plaintiff | **DEFENDANT WINTRODE ENTERPRISES' REPLY TO PLAINTIFF GUNVAULT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| **WINTRODE ENTERPRISES, INC. d/b/a BULLDOG CASES,** | Hearing Date:    January 13, 2014<br>Hearing Time:    8:30 am<br>Courtroom:       750 Roybal |
| Defendant. | Judge:   Hon. John A. Kronstadt |
| **WINTRODE ENTERPRISES, INC. d/b/a BULLDOG CASES,** | |
| Counter-Claimant | |
| vs. | |
| **GUNVAULT, INC.**<br>Counter-Defendant. | |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

owens tarabichi llp
Counselors At Law

Def. Reply ISO Mot. for
Summary Judgment

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................1

II.  ARGUMENT .........................................................................................1

    A.   The claim terms "thin" and "lightweight" are indefinite
    and the '337 Patent is therefore invalid. ...........................................1

        1.   *This Court can conclude that claims terms
        are indefinite...*.......................................................................1

        2.   *"Thin" and "Lightweight" are indefinite* ............................3

    B.   Plaintiff has presented no evidence of literal infringement. ............4

        1.   *Plaintiff erroneously argues that the "end" includes portions
        along the length of the catch rod despite this Court's
        interpretation excluding such...* ...............................................4

        2.   *Plaintiff fails to show that Defendant's products
        include the statutory equivalent of the
        "actuator means."* ..................................................................6

    C.   Plaintiff's arguments under the doctrine of equivalents fail..........10

        1.   *Plaintiff is estopped from asserting
        doctrine of equivalents...*........................................................10

        2.   *Even if Plaintiff can argue doctrine of equivalents,
        such fails* ...............................................................................12

            a.   *The catch in Defendant's product
            is not an equivalent*.....................................................13

            b.   *There is no equivalent actuator means in
            Defendant's products* .................................................16

III. CONCLUSION ...................................................................................18

owens tarabichi llp
Counselors At Law

Def. Reply ISO Mot. for
Summary Judgment

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AquaTex Indus. v. Techniche Solutions*
  479 F.3d 1320, 1328 (Fed. Cir. 2007) ........................................................... 18

*Bowers v. Baystate Techs.*
  320 F.3d 1317, 1334 (Fed. Cir. 2003) ........................................................... 12

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*
  145 F.3d 1303, 1311 (Fed. Cir. 1998) ........................................................... 11

*Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*
  424 F.3d 1293, 1310 (Fed. Cir. 2005) ........................................................... 12

*Datamize, LLC v. Plumtree Software, Inc.*,
  417 F.3d 1342, 1351 (Fed. Cir. 2005) ....................................................... 1, 3

*Ethicon Endo-Surgery v. United States Surgical Corp.*
  149 F.3d 1309, 1318 (Fed. Cir. 1998) ...................................................... 13, 14

*Exxon Research & Eng'g Co. v. United States*,
  265 F.3d 1371, 1375 (Fed. Cir. 2001) ............................................................. 2

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*
  909 F.2d 1464, 1468 (Fed. Cir. 1900) ............................................................. 6

*Integrated Tech. Corp. v. Rudolph Techs., Inc.*
  2013 U.S. App. LEXIS 22331, at *5 (Fed. Cir. Nov. 3, 2013) .................... 10

*Intervet America, Inc. v. Kee-Vet Laboratories, Inc.*,
  887 F.2d 1050, 1053 (Fed. Cir. 1989) ............................................................. 2

*Kemco Sales, Inc. v. Control Papers Co.*,
  208 F.3d 1352, 1359 (Fed. Cir. 2000) ...................................................... 1, 6, 9

*Mas-Hamilton Group v. LaGard, Inc.*,
  156 F.3d 1206, 1211 (Fed. Cir. 1998) ...................................................... 14, 15

*Microprocessor Enhancement Corp. v. Texas Instruments, Inc.*
  520 F.3d 1367, 1375 (Fed. Cir. 2008) ............................................................. 6

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*
  429 F.3d 1364, 1377 (Fed. Cir. 2005) ............................................................. 2

*Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics. Inc.*
  637 F.3d 1269, 1279 (Fed. Cir. 2011) ........................................................... 13

owens tarabichi llp
Counselors At Law

Def. Reply ISO Mot. for
Summary Judgment

*Utah Med. Prods., Inc. v. Graphic Controls Corp.*
    350 F.3d 1376, 1381-82 (Fed. Cir. 2003) .......................................................2

**Statutes**

35 U.S.C. § 112................................................................................................1, 6

Fed. R. Civ. P. 26..........................................................................................10, 16

## I.     INTRODUCTION

Plaintiff fails to provide any evidence that shows that the terms "thin" or "lightweight" are definite.  Therefore, the '337 Patent is invalid.  Plaintiff fails to show that Defendant's products literally infringe the '337 Patent, namely claim 1, the only independent claim.  Plaintiff fails to show that Defendant's products literally infringe the claim limitations of a catch having an end engageable with a latch bolt shoulder or the actuator means.  Plaintiff is precluded from asserting the doctrine of equivalents as to the catch based on prosecution history estoppel and as to the actuator means based on the doctrine of after-acquired technology.  Nonetheless, Plaintiff has failed to conduct a proper analysis under the doctrine of equivalents, but if it had, it cannot show that either of these elements are present under the doctrine of equivalents.

## II.    ARGUMENT

### A.     The claim terms "thin" and "lightweight" are indefinite and the '337 Patent is therefore invalid.

#### 1.     *This Court can conclude that claims terms are indefinite.*

Plaintiff incorrectly asserts that this Court is barred from deciding whether claim terms in the '337 Patent are indefinite because Defendant supposedly waived such an argument by not presenting it in the previous claim construction hearing.  (*See* PACER #83, Pl.'s Opp. to Def.'s Mot. for Summary Judgment ("Pl.'s Opp.") 6-8.)  However, Plaintiff mistakenly presumes that Defendant's indefiniteness argument is a claim construction argument.  (*See id.* at 6-7.)  The question of whether certain terms are definite or indefinite is essential to the statutory requirement that every patent "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  35 U.S.C. § 112, ¶ 2; *see Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005).  On the other hand, the goal of claim construction is to "ascertain[] the scope and meaning of the claims at issue."

*Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1359 (Fed. Cir. 2000). Determining the meaning or definition of a given claim term is different than determining whether such a claim term is so ambiguous that it cannot be defined. The purpose of claim construction is to define the scope and meaning of disputed claim terms that one party argues should not be provided an "ordinary meaning". If certain terms, such as here "thin" and "lightweight," have an ordinary meaning that is nonetheless ambiguous and therefore indefinite, the claim is invalid. Issues such as "[a]mbiguity, undue breadth, vagueness, and triviality are matters which go to claim *validity* . . . , not to interpretation or construction." *Intervet America, Inc. v. Kee-Vet Laboratories, Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989) (emphasis in original); *see also Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001) (stating that a claim is indefinite if it is "insolubly ambiguous[] and no narrowing construction can properly be adopted"). If a claim term is indefinite, then the patent is invalid, *see id.*, and there is no need for claim construction. Accordingly, Defendant's indefiniteness argument is properly before this Court and has not been waived.[1]

---

[1] Plaintiff cites *Bettcher Industries, Inc. v. Bunzi USA, Inc.* for its waiver argument, but *Bettcher* is inapposite. In *Bettcher*, the Federal Circuit agreed that the trial court could reject a party's attempt to engage in post-*Markman* claim construction because the court issued its order "premised on the express belief that there were no other claim construction disputes." *Bettcher Indus.*, 661 F.3d at 640. In the present case, despite this not being a claim construction issue, there was no such premise. In fact, Defendant is unaware of any order indicating that claim terms cannot be construed after the Markman hearing, and Plaintiff has not cited to any. Nonetheless, the Federal Circuit has approved of "rolling" claim construction that allows for subsequent claim constructions by the court. *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005); *see also Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1381-82 (Fed. Cir. 2003). As the Markman hearing in this case was done relatively early, it is not unusual or unexpected that as discovery in a case progresses, including the use of experts and expert discovery, that additional terms may need to be construed later.

### 2. *"Thin" and "Lightweight" are indefinite.*

Plaintiff has not presented any evidence to show that the terms "thin" and "lightweight" are definite.  Plaintiff's argument that the phrase "said catch comprising a thin, elongated, lightweight rod" is sufficiently definite, *see* Pl.'s Opp. 9, contradicts the testimony of its own expert, Scott Meek.  In his deposition, Meek admitted that these terms are relative and was unable to define either "thin" or "lightweight" in any definite or quantitative manner.  (Owens Decl. ¶ 2, Ex. A ("Meek Dep." Dec. 11, 2013) 118:20-119:3.)[2]  He only stated that the term "thin" was relative to something thick, and that the term "lightweight" was relative to something heavier or more massive.  *Id.*  Such statements are clear evidence the indefiniteness of these terms not of their definiteness.

However, Plaintiff now asserts that Meek believes that "thin" and "lightweight" are definite.  (*See* Pl.'s Opp. 9.)  However, Meek only points to the specification of the '337 Patent and in conclusory fashion indicates that one of skill in the art would know what these terms mean.  (PACER #83-2, "Meek Decl." ¶¶ 5, 6, and 9.)  In fact, he can only point to the specification stating that the catch should be lightweight to deter accidental opening, *id.* ¶6, but such still does not provide sufficient meaning to the word "lightweight," as clearly other factors could affect accidental opening.  (Pratt Decl. ¶3, Ex. A ("Pratt Rebuttal Rep.") 19.)  In fact, Meek states that there are seven factors required to be evaluated to design the dimensions of the catch, Meek Decl. ¶7, yet the specification provides no guidance whatsoever for determining these factors.  Further, Meek cannot point to any description in the specification regarding the term "thin."  The Federal Circuit has held that, when a word of degree is used, the patent specification must provide "some standard for measuring that degree."  *Datamize, LLC*, 417 F.3d at 1351 (quoting *Seattle Box Co. v. Industrial Crating & Packaging, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984)).  Words such as "thin" and "lightweight" are clearly words of

---

[2] See Defendant's evidentiary objections to the Meek Declaration.

degree: a metal catch can have varying degrees of thickness and varying weights. The patent specification, however, provides no measurement standards by which the metes and bounds of these terms can be determined.[3]   Accordingly, these terms and indefinite, and the '337 Patent is invalid.

### B. Plaintiff has presented no evidence of literal infringement.

#### 1. *Plaintiff erroneously argues that the "end" includes portions along the length of the catch rod despite this Court's interpretation excluding such.*

Plaintiff ignores this Court's construction of the "end" of the catch by arguing that portions of the catch specifically excluded as being part of the "end" nonetheless constitute the "end."  Specifically, Plaintiff incorrectly argues that the extra length of the catch in Defendant's products is part of the "end" of the catch. (Pl.'s Opp. 16-17.)

First, Plaintiff argues illogically that because various portions of the catch are used in the '337 Patent to contact structures for the actuator means, placement of these structures at other positions along the length of the catch effectively extends the "end" to be any portion along the length of the catch where such structures are engaged.  (*See* Pl.'s Opp. 11-14.)  Plaintiff argues this must be the case or the preferred embodiment would be exclude by the Court's construction of the term "end."  (*Id*. 14.)  To the contrary, the construction of the "end" has nothing to do with the actuator structure.  The "end" is that portion reasonably necessary to engage the latch bolt shoulder, PACER #46, Order Construing Claim Terms ("*Markman* Order"), not the actuator means.

Second, Plaintiff argues that extra length of catch in Defendant's products is

---

[3] Mr. Loeff, who purportedly purchased rights to the invention described in the '337 Patent testified that that products incorporating the latch mechanism of the '337 Patent were "production ready" in late 1993 or early 1994.  (Owens Decl. ¶ 3, Ex. B ("Loeff Dep." Nov. 26, 2013) 52:5-15.)  Since the '337 Patent was filed in October 1994, the latch mechanism was in existence and a clear description of its thinness and lightweightedness could have easily been described in the specification.

part of the "end" of the catch because it is important for engaging a manual key actuator.  (Pl.'s Opp. 16-17.)  Plaintiff's construction is nonsensical because if the "end" of the catch can be extended past that length necessary to engage the latch bolt shoulder, the "end" of the catch no longer rests on the bolt shoulder.  Rather, a portion of the "leg" of the catch would rest on the bolt shoulder.  The Court rejected exactly this type of definition in its *Markman* Order, stating that the "end" of the catch was inherently different from the "leg" of the catch.  (*Markman* Order 9-10.)  As the Court noted, the "end" of the catch is irrefutably associated with engaging the latch bolt shoulder.  (*Id.* at 10.)  The presence or absence of a manual key actuator or other mechanism is irrelevant in this context.[4]  Defendant's expert, Dr. John Pratt, clearly explained that the "end" of the catch in each of Defendant's products does not engage the latch bolt shoulder.  (*See* PACER #72-4, Ex. A, Expert Rep. of Dr. John Pratt ("Pratt Rep.") 7.)

Plaintiff also argues that the manual key is part of the '337 Patent because of an incorporation by reference to U.S. Pat. No. 5,161,396.  The '337 Patent only states that the latch mechanism could be used in a gun case like that described in the '396 Patent and is directed to use with the finger keypad not the manual key, *see* PACER #57, Ex. A ('337 Patent), col. 1, ll. 6-9, col. 1, l. 59-col. 2, l. 8.  Further, the specification of the '337 Patent only describes one embodiment of the claimed latch mechanism—one in which the end of the catch rod engages the shoulder of the latch bolt.  Neither the specification nor the figures in the '337 Patent show an extended catch rod that engages a manual key any distance from the latch bolt.  So, again, the "end" of the catch is unrelated to any manual key actuator.

---

[4] Plaintiff's confusion on this point is not surprising.  Plaintiff's own expert, Mr. Meek, admitted that he only reviewed specific highlighted portions of the Court's *Markman* Order and only considered these highlighted portions in his analysis. (Meek Dep. 145:22-146:19, 36:1-37:21; 38:7-15.)  Therefore, he did not review the Court's rejection of portions of the "leg" as being part of the "end," but agreed and used GunVault's rejected proposed construction.

### 2.   *Plaintiff fails to show that Defendant's products include the statutory equivalent of the "actuator means."*[5]

Plaintiff asserts that Defendant's products contain the statutory equivalent of the "actuator means" in claim, but this argument fails because any structures in Defendant's products are substantially different from the actuator means disclosed in the '337 Patent.  Under 35 U.S.C. § 112, paragraph 6, "a patentee may define the structure for performing a particular function generically through the use of a means expression, provided that it discloses specific structure(s) corresponding to that means."  *Kemco Sales, Inc.*, 208 F.3d at 1360.  Under statutory equivalence, an accused structure is "equivalent" to a means-plus-function limitation under 35 U.S.C. § 112, paragraph 6, if the accused structure performs an identical function

---

[5] Plaintiff is quite confused about means-plus-function limitations.  Plaintiff states that the Court interpreted the means-plus-function limitation in claim 1 as having only corresponding structure and "not structure**s**."  (Pl's Opp. 22.)  Such is a silly distinction since the Court identified no less than four separate structures as comprising the structure for this limitation, *Markman* Order 11.  A means-plus-function element is limited to structure disclosed in the specification and equivalents thereof.  35 U.S.C. § 112.  Therefore, infringement of a means-plus-function element, requires all of the identified structure in the accused products *or* the structural equivalents.  Plaintiff's statement that Defendant's analysis on this point is flawed because the claim has never been construed as an apparatus claim is confusing.  Claim 1 *is* an apparatus claim, *see Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1900), with a means-plus-function element that is limited to the structure described in the specification and equivalents thereof, *Microprocessor Enhancement Corp. v. Texas Instruments, Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008).  Accordingly, Defendant's analysis concluding that the structures required for the means-plus-function limitation is correct—it is not Defendant's burden to analyze structural equivalents for the Plaintiff.  Although Plaintiff now states there are such structural equivalents present, it has not refuted and has therefore admitted that Defendant's products do not literally have the structures of this claim element.  (In fact, Plaintiff's expert Meek agrees there is no literal infringement of the actuator means.  (Meek Dep. 36:16-37:5; 106:13-21.))  Therefore, Plaintiff's case rests on showing structural equivalents.

Def. Reply ISO Mot. for
Summary Judgment

and is otherwise insubstantially different with respect to structure.  *Id.* at 1364.  One method of analyzing statutory equivalence is to ask whether the accused structure performs an "identical function, in substantially the same way, with substantially the same result" as the means-plus-function limitation.  *Id.*

Here, the way in which Defendant's products move the catch from a first position to a second position is substantially different than the way in which the "actuating means" disclosed in the '337 Patent performs that function.  In Defendant's BD1200, the catch passes through an opening or slot in a rigid linkage, rather than being attached directly to a flexible cable.  (Pratt Rep. 12, Fig. 5; Pratt Rebuttal Rep. 16-17; Meek Dep. 68:2-6 (admitting that a rigid linkage is different than a flexible cable).)  Therefore, when activated, the rigid linkage is moved in a plane by the disk until the slot in the rigid linkage is positioned to pull on the catch rod, as opposed to the actuator means of the '337 Patent in which the flexible cable has to wrap around the drive shaft to become taunt and then pull the catch rod.  (Pratt Rebuttal Rep 16-17.)  The rigid linkage does not have to pass through a hole in the disk and is actually attached to one side of the disk, whereas the flexible cable is not attached to the disk and must pass through a hole in the disk so that it can be attached to the drive shaft on one side of the disk to permit wrapping around the drive shaft on the other side of the disk.  (*Id.*)  Further, during operation, the slot in the rigid linkage in the BD1200 is designed to allow the catch to move back and forth within that slot as necessary and allows the catch to freely move within the slot.  (*Id.*)  However, in the '337 Patent, the flexible cable is directly attached to the catch such that the catch actually pulls the flexible cable when it returns to its biased position.  (*Id.* 16.)  A further difference is that the actuator means of the '337 Patent requires a stop mechanism on the catch rod to prevent the flexible cable from coming off.  (*Id.*)  To the contrary, in the BD1200, the way in which the rigid linkage avoids the need for a stop mechanism is the inherent rigidity of the rigid linkage that would prevent any lateral movement along the catch rod thereby

avoiding the rigid linkage coming off of the end of the catch rod.  (*Id*. 16-17.)
Plaintiff's suggestion that the bend at the end of the catch rod in the BD1200 serves
as a stop mechanism is nonsensical because the rigid linkage would never move to
that end of the catch rod, so no stop mechanism is required.[6]

Similarly, the movement of the catch in the BD1500/2500 is performed in a
substantially different way than in the '337 Patent.  In these products, a cable is
permanently attached to a sleeve that is crimped on the motor drive shaft, as oppose
to a flexible cable that has a loop placed over one end of the drive shaft that then
passes through a hole in the disk and is wrapped around the drive shaft on the other
side of the disk.  (*Id*. 17.)  Accordingly, in operation, because the cable in the
BD1500/2500 is directly attached to the drive shaft, it is simply pulled as the drive
shaft rotates.  (*Id*.)  To the contrary, the disk in the '337 Patent is required to permit
the flexible cable, which is not directly or permanently attached to the drive shaft,
to wrap around the drive shaft.  (*Id*. 16.)  Otherwise, since the flexible cable is
simply looped over the end of the drive shaft it would not wrap or be pulled.  (*Id*.)
A further difference is that these products also do not need or have a stop
mechanism.  The way in which the cable in these products is prevented from
coming off of the end of the catch is the length of the cable relative to the length of
the catch itself.  (*Id*. 17.)  Accordingly, the cable length is not long enough, relative
to the length of the catch and the distance of the end of the catch from where the
cable attaches to the catch, to permit it to come off of the end of the catch. (*Id*. 17.)

Given all of these differences in the way the catch is moved from a first
position to a second position, Defendant's products do not contain a statutory

---

[6] In fact, this "bend" that Plaintiff refers to is an inherent part of the catch rod that
actually extends in a direction *parallel* to the plane of the latch bolt.  (Pratt Rebuttal
Rep. 7, 17.)  Therefore, this portion, along with a second portion of the catch rod
closer to the latch bolt that also extends in a direction parallel to the plane of the
latch bolt means that the catch rod of Defendant's BD1200 does not extend in a
direction non-parallel to the latch bolt as required by claim 1 and therefore does not
infringe for this reason as well.

equivalent of the actuator means disclosed in the '337 Patent.  Therefore, there is no literal infringement of the actuator means.

In a similar case involving different ways of performing the same function, the Federal Circuit held that the allegedly infringing means was *not* statutorily equivalent to the means disclosed in the patent.  *See Kemco Sales, Inc.*, 208 F.3d at 1364.  In *Kemco Sales*, the court held that a fold-over flap structure for closing an envelope, which was disclosed in the patent at issue, was not statutorily equivalent to an allegedly infringing dual-lip structure.  *Id.*  The court noted that the disclosed flap "closes by folding over the envelope, [but] the dual-lip structure closes the accused envelope in a different way by meeting together and binding via the internal adhesive."  *Id.*  Similarly, in this case, the actuator means disclosed by the '337 Patent moves the catch in a specific way, involving a cable connected to one end of the catch in conjunction with a stop mechanism, a disk with at least one opening attached to the drive shaft through which a flexible cable passes such that it can be looped over the end of the drive shaft on one side of the disk and wrap around the drive shaft on the other side of the disk.  *See* the '337 Patent, claim 1.  The actuator means in each of Defendant's products, however, moves the catch in a different way.  In the BD1200, there is no disk, no flexible cable that passes through a hole in a disk, no attachment of a flexible cable at one end to the catch and at the other end to a drive shaft, no wrapping of the flexible cable around a drive shaft, and no stop mechanism.  In total, there is no statutory structural equivalence to the recited actuator means of the '337 Patent because at least the way in which the function of the actuator means is performed is entirely different.

The above analysis is unchanged by the paltry analysis in Plaintiff's expert report.  Meek does not engage in any sort of "way" or "result" analysis and focuses solely on the function of the various structures encompassed by the "actuator means."  (*See* Meek Rep. 6-8.)  The report completely ignores whether Defendant's products perform the identical function as the actuator means in the '337 Patent in

substantially the same way to produce substantially the same result.  Therefore, the Meek report is unhelpful and does not support Plaintiff's assertion of statutory equivalence.[7]

### C.    Plaintiff's arguments under the doctrine of equivalents fail.

#### 1.    *Plaintiff is estopped from asserting doctrine of equivalents.*

Plaintiff is barred from arguing that the catch disclosed in the '337 Patent is equivalent to the catch used in Defendant's products.  Under the doctrine of prosecution history estoppel, a patentee may not "recaptur[e] through the doctrine of equivalents the subject matter that the applicant surrendered during [patent] prosecution."  *Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 2013 U.S. App. LEXIS 22331, at *5 (Fed. Cir. Nov. 3, 2013).  The doctrine "presumptively applies when the applicant made a narrowing claim amendment related to patentability."  *Id.*

During prosecution of the '337 Patent, Plaintiff amended claim 1 to further limit the catch as a "thin, elongated, lightweight rod elongated in a direction non-parallel to said plane" to specifically gain allowance over the cited prior art. (PACER #72-3, Owens Decl. ¶3, Ex. A (Amend. in Resp. to Aug, 14, 1995 Office Action 1-2).)  By explicitly describing the catch as an "elongated" rod, Plaintiff narrowed the claim with respect to the catch and axiomatically the end of the rod. Such estops Plaintiff from asserting the doctrine of equivalents with respect to the

_____

[7] Meek offers no additional analysis in his declaration in support of Plaintiff's Opposition.  Meek merely offers conclusory statements that various structures in Defendant's products perform the same function as the "actuator means" disclosed in the '337 Patent and do so in substantially the same way to achieve substantially the same result.  (Decl. of Scott Meek in Support of Pl.'s Opp. ("Meek Decl.") ¶¶ 15-20.)  In fact, Meek considered his analysis to be under the doctrine of equivalents, as opposed to one of structural equivalents.  (Meek Dep. 141:20-143:11; 159:20-161:11; 106:13-21.)  Even if Meek had offered substantive analysis in his declaration, it would have been untimely and should not be considered, as it is in violation of Fed. R. Civ. P. 26(a)(2)(B) and 26(e)(2) as opinions not properly disclosed initially and improper supplementation.

"end" of the catch.  In addition, this amendment also estops Plaintiff from asserting any equivalence regarding "lightweight."  In other words, any catch that is not "lightweight" does not infringe (noting, of course, that it is unclear what the term "lightweight" means since it is not defined in the specification and is therefore completely subjective and indefinite).  Regardless, the catch used in each of Defendant's products is not "lightweight" by any acceptable definition of the word.  As expert Dr. John Pratt noted, the catch in Defendant's BD1200 product is 36% heavier than it would be otherwise since the end of the catch does not contact the bolt shoulder but rather extends 15/16ths of an inch past the latch bolt shoulder. (Pratt Report 7.)  Similarly, the catch used in the BD1500 and BD2500 models is 2.4 times heavier than it would be otherwise, owing to an extra 2.66 inches of catch that extends past the bolt shoulder.  (*Id.*)  The term "lightweight," whatever its meaning, cannot encompass weight increases of 36% and 240%, respectively, that are more than necessary according to the '337 Patent.  Since Defendant's catches do not fall literally within the limitations of the "end" of the catch engaging the shoulder of the latch bolt or within the limitations of a "lightweight" catch, Defendant's products do not infringe the patent.[8]

   At the outset, Plaintiff's doctrine of equivalents argument as to the actuator means should immediately fail since the technology at issue predates the '337 Patent.  Under the doctrine of after-developed technology, which exists for analyzing means-plus-function claims, if "the equivalence issue does not involve later-developed technologies, but rather involves technology that predates the invention itself," then "a finding of non-equivalence for § 112, ¶ 6 purposes should preclude a contrary finding under the doctrine of equivalents."  *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*, 145 F.3d 1303, 1311 (Fed. Cir. 1998).

---

[8] It is not surprising that Plaintiff avoids this estoppel issue and proceeds to make an argument under the doctrine of equivalents because its own expert did not even consider the prosecution file history of the '337 Patent.  (*See* Meek Dep. 29:23-30:4.)

Def. Reply ISO Mot. for
Summary Judgment

In other words, for already-developed technology, a failed statutory equivalence argument implies a failed doctrine of equivalents argument.  Since the doctrine of equivalents protects the patentee against future technological advances, *id.*, a patentee using already-developed technology does not need such protection.  The patentee could have readily disclosed any prior technology in the patent itself. According to the Federal Circuit, the patentee should not "get two bites at the apple" by invoking both statutory equivalence and the doctrine of equivalents.  *Id.* Plaintiff's expert Meek admits that the technology for the actuator means alleged to be in Defendant's products was already known to one of skill in the art at the time of the patent.  (Meek Decl. ¶ 26.)  Given the relatively simple mechanisms and structures disclosed in the "actuator means" claim limitation and Meek's admission, Plaintiff is foreclosed from arguing the doctrine of equivalents for the actuator means.

### 2.      Even if Plaintiff can argue doctrine of equivalents, such fails.

Even assuming that prosecution history estoppel does not foreclose Plaintiff's doctrine of equivalence argument, Plaintiff has failed to show that Defendant's products contain equivalents of each limitation in claim 1 of the '337 Patent.  To prove patent infringement, the patent owner "must show that the accused device contains each limitation of the asserted claim or an equivalent of each limitation." *Bowers v. Baystate Techs.*, 320 F.3d 1317, 1334 (Fed. Cir. 2003) (internal citations omitted).  In other words, the patent owner must show either literal infringement or infringement under the doctrine of equivalents.  *See Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005).

Under the doctrine of equivalents, the key question is "whether the structural differences between the particular elements of the accused device and the asserted claim's limitations . . . are insubstantial." *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1212 (Fed. Cir. 1998).  If the differences are substantial, there is no

infringement.  *See id.*  One method of determining whether substantial differences exist is to use the so-called function-way-result test.  *Id.*  This test asks whether an element of the allegedly infringing device "performs substantially the same function in substantially the same way to obtain the same result as an element of the patented invention."  *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics. Inc.*, 637 F.3d 1269, 1279 (Fed. Cir. 2011) (internal quotations omitted).

### a.    The catch in Defendant's products is not an equivalent.

Again, assuming, *arguendo*, that prosecution history estoppel does not foreclose Plaintiff's doctrine of equivalents argument, the differences between the catch disclosed in the '337 Patent and the one used in Defendant's products are substantial.  The '337 Patent discloses a latch mechanism where the "end" of the catch contacts the latch bolt shoulder.  (*See* '337 Patent, claim 1.)  This Court previously determined that the "end" of the catch means the portion of the catch near one tip reasonably necessary to engage the shoulder.  (*Markman* Order 10.) The catch used in Defendant's products, however, does not contact the latch bolt at a portion near one tip.  As expert Dr. John Pratt noted, the tip of the catch on the BD1200 is almost 1 inch from the bolt shoulder.  (Pratt Rep. 7.)  Similarly, the tip of the catch in the BD1500 and BD2500 models is 2.66 inches from the bolt shoulder.  (*Id.*)  An extra length of either almost 1 inch or 2.66 inches, respectively, is a significant structural difference.  Moreover, it would be nonsensical to take the Court's construction of the term "end," which expressly excluded the leg of the catch and any distance along the catch and turn that on its head to conclude that the "end" may include the middle of the catch or any portion along the leg of the catch under the doctrine of equivalents.

In a similar case involving distances on a patented device, the Federal Circuit rejected a doctrine of equivalents argument and affirmed the district court's grant of summary judgment.  In *Ethicon Endo-Surgery v. United States Surgical Corp.*, one of the patent claims at issue recited a lockout mechanism for a surgical stapler that

Def. Reply ISO Mot. for
Summary Judgment

1   was "connected" to longitudinal slots on the stapler.  *Ethicon Endo-Surgery v.*

2   *United States Surgical Corp.*, 149 F.3d 1309, 1318 (Fed. Cir. 1998).  The lockout

3   mechanism on defendant's stapler, however, was "nowhere near" the longitudinal

4   slots.  *Id.*  As a result, the district court rejected the plaintiff's doctrine of

5   equivalents argument and awarded the defendant summary judgment.  *Id.*  The

6   Federal Circuit agreed, noting that defendant's lockout mechanism was located near

7   the rear of its stapler, which was "opposite the longitudinal slots."  *Id.*  As a result,

8   "no reasonable jury could have found that . . . [defendant's] lockout was

9   substantially connected" to the longitudinal slots.  *Id.* (internal quotations omitted).

10  This case should have the same result for the same reason.  The "end" of the catch

11  on each of Defendant's products is nowhere near the bolt shoulder.  Rather, the

12  "end" is either 15/16ths of an inch or 2.66 inches away.  Pratt Rep. 7.  As this Court

13  has already held, the "end" of the catch is that part of the catch reasonably

14  necessary to engage the bolt shoulder.  (*Markman* Order 10.)  Thus, the "end" of

15  the catch is intimately associated with the bolt shoulder, much like how the lockout

16  mechanism in *Ethicon* was connected to the longitudinal slots.  In Defendant's

17  products, however, the "end" of the catch is in no way associated with the bolt

18  shoulder since there is a substantial distance between these two structures.  Like

19  *Ethicon*, such a distance forecloses any doctrine of equivalents argument.

20      Plaintiff's equivalents argument fails for an additional reason: the extra

21  length on Defendant's catches means they are significantly heavier than they would

22  be otherwise if the end of the catch contacted the bolt shoulder.  For example, in the

23  BD1200 latch mechanism, the extra 15/16th inch of catch that extends past the bolt

24  shoulder results in a weight increase of 36%.  (Pratt Rep. 7.)  In the BD1500/2500

25  latch mechanism, this weight increase is even more pronounced.  The additional

26  2.66 inches of catch that extend past the bolt shoulder make the catch 2.4 times

27  heavier than it would be otherwise.  (*Id.*)  Since the "end" of the catch in each of

28  Defendant's products does not contact the bolt shoulder, these catches are

1   significantly heavier compared to the catch disclosed in the '337 Patent.  This

2   weight difference is not a mere insubstantial structural difference.  *See Mas-*

3   *Hamilton Group*, 156 F.3d at 1212.  Rather, the weight increase is significant,

4   especially since the '337 Patent explicitly claims a "lightweight" catch.  As

5   Defendant has already argued above, whatever the term "lightweight" means, it

6   cannot encompass weight increases of 36% and 240%, respectively.  The extra

7   length of the catch in each of Defendant's products is a significant difference that

8   contradicts Plaintiff's argument that the catches are equivalent.

9        The extra length of Defendant's catches results in an additional substantial

10  differences compared to the catch disclosed in the '337 Patent.  As Dr. Pratt noted

11  in his rebuttal report, with respect to the BD1500/2500, the extra length of the catch

12  enables mechanical access to the gun vault in the event of a power failure.  (Pratt

13  Rebuttal Rep. 8.)  Dr. Pratt observed that the extended length of the BD1500/2500

14  catch would allow a user to open the vault using a mechanical key.  (*Id.*)  This

15  ability is a substantial difference when compared to the possibility that a user could

16  not open a gun vault due to power failure.

17       Finally, the function-way-result test shows that substantial differences exist

18  between the catch disclosed in the '337 Patent and the catch used in Defendant's

19  products since the latter performs its function in a substantially different way.  The

20  function of the catch is twofold: first, to rest on the latch bolt to maintain the bolt in

21  a locked position, and second, to be capable of being moved from the shoulder by a

22  release command.  In Defendant's products, the catch rests on the latch bolt in a

23  different way than in the '337 Patent.  Specifically, the "end" of the catch does not

24  rest on the latch bolt.  (Pratt Rep. 7.)  Rather, the "end" of the catch extends far past

25  the bolt shoulder, resulting in a substantial difference in the place where the catch

26  rests.  Also, the catch on Defendant's products is capable of being moved from the

27  shoulder in a different way.  The "end" of the catch is not moved from the shoulder,

28  since the "end" never rested on the shoulder.  Under the function-way-result test,

the catch in Defendant's products is therefore substantially different, and not equivalent, to the catch disclosed in the '337 Patent.

### b.    There is no equivalent actuator means in Defendant's products.

Again, assuming, *arguendo*, that the doctrine of after-developed technology does not foreclose Plaintiff's doctrine of equivalents argument, the "actuator means" limitation in claim 1(d) is substantially different from the actuating mechanism in Defendant's products.  As with the catch, the actuator means in Defendant's products performs its function in at least a substantially different way than the actuator means disclosed in the patent.  As claim 1 of the '337 Patent states, the function of the actuator means is to move the catch from a first position.  In the '337 Patent, this function is achieved by means of a flexible cable, where one end of the cable is anchored at the end of the catch with a stop mechanism and where the other end is passed through a hole in a disk attached to a drive shaft of a motor and looped over the end of the drive shaft on one side of the disk.  (*Markman* Order 11.)  When the drive shaft rotates, the cable is then wrapped around the drive shaft on the other side of the disk and pulls the catch.  (*See id.*)  In Defendant's products, however, the way in which the catch moves from a first to a second position is profoundly different.  Specifically, the differences in the way in which Defendant's BD1200 and BD1500/2500 achieve this function has been described above in connection with the analysis of the lack of statutory equivalents and applies equally here.

Nothing in Plaintiff's expert report rebuts or changes the above analysis.  In fact, Mr. Meek admits states that he "do[es] not know what analysis would apply to determine equivalence of an apparatus claim."  Meek Decl. ¶ 28.  Given that the only independent claim in the '337 Patent is just such an apparatus claim, Mr. Meek's is clearly not qualified to provide any such analysis and no consideration

should be given to either his report or Declaration.[9]

The Meek report simply asserts, without any detailed examination, that various structures in Defendant's products are equivalent to those required by the "actuator means" disclosed in the patent.  (*See* Meek Rep. 6-8.)  For example, the report states that the "pin and rigid linkage" in the BD1200 model is "the equivalent of the loop at one end of a flexible cable" because the two structures perform the same function.  (*Id.* 6.)  The report, however, fails to analyze whether the two structures perform this function in substantially the same way to produce substantially the same result.  (*See id.* 6-8.)  Similarly, in examining the BD1500/2500 products, Plaintiff's supposed expert claims that the products have a "crimped sleeve" that "is the equivalent of the disk mounted on the drive shaft with at least one opening."  (Meek Rep. 6.)  Again, Mr. Meek's conclusion is based only on his assertion that the two structures have the same function.  (*Id.*)  He performs no analysis of the "way" or "result" prongs of the function-way-result test for the doctrine of equivalents.  In fact, Mr. Meek admitted in his deposition that his report did not include an analysis of the "way" portion of a proper equivalence analysis. (Meek Dep. 188:21-189:1, 193:15-194:25.)

In some instances, the Meek report does not even perform such perfunctory analysis.  For example, the report concludes that "a flexible cable [that] extends toward and is mounted about the end of the catch with a loop at the cable's other end" is present in the BD1500/2500 without any further discussion.  (Meek Rep. 7.)

---

[9] Plaintiff attempts to remedy the Meek report defects with an untimely declaration from Mr. Meek analyzing the "actuator means."  *See* Meek Decl. ¶¶ 24-27.  As noted above, such should not be considered as it is in violation of Fed. R. Civ. P. 26(a)(2)(B) and 26(e)(2) as opinions not properly disclosed initially and improper supplementation.  Even if such opinions are now admissible, Mr. Meek does not present any final opinions on whether Defendant's products actually meet the limitations of the "actuator means" disclosed in the '337 Patent.  Mr. Meek only provides opinions on claim construction, which are themselves uninformed due to his admission that he failed to read the '337 Patent prosecution file history.  *See* Meek Dep. 29:23-25.

Def. Reply ISO Mot. for
Summary Judgment

The report fails to specify exactly which structure in the BD1500/2500 is equivalent to the flexible cable, as well as exactly how it is equivalent.  Mr. Meek also asserts, without any discussion or analysis, that the limitation of the cable being maintained on the catch through the use of a stop mechanism is present in the BD1500/2500. (*Id.* 8.)  However, as Defendants have previously shown, the cable in the BD1500/2500 is directly connected to the catch; there is no stop mechanism or other additional structure that maintains the cable on the catch.  (Pratt Rep. 9.) Meek engages in no analysis at all with respect to this limitation.  The report's insufficient, and sometimes absent, analysis renders it fundamentally flawed.

Additionally, the Meek report presents the kind of generalized assertions that have been previously rejected by the Federal Circuit.  According to that court, "a patentee must . . . provide particularized testimony and linking argument as to the insubstantiality of the differences between the claimed invention and the accused device." *AquaTex Indus. v. Techniche Solutions*, 479 F.3d 1320, 1328 (Fed. Cir. 2007) (quoting *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)).  Such testimony "must be presented on a limitation-by-limitation basis.  Generalized testimony as to the overall similarity between the claims and the accused infringer's product  . . . will not suffice." *Id.*  Plaintiff's report presents this exact kind of unacceptable, generalized evidence.  The report does not examine the differences between the '337 Patent and Defendant's products on a limitation-by-limitation basis.  Rather, the report merely claims that various structures are equivalent because they perform the same function.  (*See* Meek Rep. 6-8.)  In other words, Plaintiff's expert has only testified "to the overall similarity between the claims and the accused infringer's product," testimony which "will not suffice" in an equivalents analysis.  *AquaTex Indus.*, 479 F.3d at 1328.

## III.   CONCLUSION

Plaintiff has not shown that the terms "thin" or "lightweight" are definite. Therefore, the '337 Patent is invalid.  Plaintiff has not shown that Defendant's

1   products literally infringe the only independent claim of the '337 Patent.

2   Defendant's products do not have a catch having an end engageable with a latch

3   bolt shoulder, nor do they have the exact or structural equivalents of the structure

4   held by this Court to be that required for the actuator means.  Defendant's products

5   do not infringe under the doctrine of equivalents because Plaintiff is precluded from

6   asserting the doctrine of equivalents as to the catch based on prosecution history

7   estoppel and as to the actuator means based on the doctrine of after-acquired

8   technology.  Moreover, Plaintiff has not shown a proper analysis under the doctrine

9   of equivalents, and in any regard, such a proper analysis shows no equivalents.

10   Therefore, Defendant's Motion should be granted and the '337 Patent declared

11   invalid and not infringed by any of the Defendant's products.

12

13   Date:  ___January 6, 2013___          Respectfully Submitted,

14                                        /s/ David R. Owens_____
                                          David R. Owens
15                                        OWENS TARABICHI LLP

16                                        Attorneys for Defendant
                                          Wintrode Enterprises, Inc.
17                                        d/b/a Bulldog Cases

18

19

20

21

22

23

24

25

26

27

28